UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | MDL No. 15-2666 (JNE/DTS) ORDER |

This Document Relates to:
Case No. 23-cv-1818 (*Gary G. Pelican v. 3M Company and Arizant Healthcare, Inc.*)

In May 2016, Gary Pelican, a resident and citizen of Louisiana, "underwent surgery during which the Bair Hugger Forced Air Warming system (hereinafter 'Bair Hugger') was used during the course and scope of his surgery at the Lake Charles Memorial Hospital, in Lake Charles, Louisiana." (Compl. ¶¶ 2, 7)[1] He alleged that "[c]ontaminants introduced into [his] open surgical wound as a direct and proximate result of use of the Bair Hugger during the subject surgery resulted in [him] developing a periprosthetic joint infection." (Compl. ¶ 8) "As a result of [his] infection caused by the Bair Hugger, [Pelican] has undergone numerous procedures following a postoperative infection, requiring intervention, management, and surgeries." (Compl. ¶ 9)

In June 2023, Pelican brought this action against 3M Company and Arizant Healthcare, Inc. (collectively, "Defendants"). He asserted several claims: negligence; strict liability based on failure to warn; strict liability based on defective design and manufacture; breach of express warranty; breach of implied warranty of merchantability; violation of the Minnesota Prevention of Consumer Fraud Act; violation of the Minnesota Deceptive Trade Practices Act; violation of the Minnesota Unlawful Trade Practices Act;

---

[1] Pelican's Complaint states that the surgery took place in December 2014. His fact sheet and medical records indicate that the surgery took place in May 2016.

1

violation of the Minnesota False Advertising Act; consumer fraud and/or unfair and deceptive trade practices under Louisiana law; negligent misrepresentation; fraudulent misrepresentation; fraudulent concealment; unjust enrichment; punitive damages; common law fraud; constructive fraud; gross negligence; and negligent infliction of emotional distress.  The case is before the Court on Defendants' Motion for Summary Judgment and Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Yoav Golan.  For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies their motion to exclude as moot.

**I.      Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendants maintained that summary judgment in their favor is appropriate because (1) "all 19 of [Pelican's] claims are time-barred under Louisiana's one-year prescriptive period"; (2) his "claims . . . fail because [he] lacks admissible evidence of specific causation"; (3) his "failure-to-warn claim fails because no reasonable jury could conclude that a warning was necessary"; (4) his "breach of warranty claim fails because [he] has no evidence of an actionable express warranty, let alone one that was relied upon and caused [him] injury"; (5) "the majority of [his] claims (16 of the 19 claims alleged) are not cognizable under Louisiana law"; and (6) several claims "fail . . . on the merits." Pelican responded that his claims under the Louisiana Product Liability Act ("LPLA") and "demand for punitive damages are viable claims"; that "the remainder of his claims are abrogated or not allowed"; that his "claims were timely brought"; that he "proffered sufficient evidence of causation to create a genuine issue of material fact in favor of his claims"; that he "proffered sufficient evidence for a reasonable jury to find that Defendant should have warned medical providers of the link between the [Bair Hugger] and [periprosthetic joint infections] before the [Bair Hugger] was used in [his] surgery"; and that his "claims for punitive damages are subject to Minnesota law, not Louisiana law, and Minnesota law provides for an award of punitive damages in a product liability claim." Considering Pelican's statement that his non-LPLA claims "are abrogated or not allowed," the Court dismisses them and turns to whether his remaining claims are time-barred. *Cf. Travers v. Chubb Eur. Grp. SE*, 714 F. Supp. 3d 812, 819 (E.D. La. 2024) ("[P]unitive damages cannot be pleaded as an independent cause of action but rather must be requested in conjunction with a cognizable cause of action." (citation omitted));

3

*Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 662–63 (Minn. 1989) ("A claim for punitive damages in this state is not an independent tort.").

"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492 (repealed 2024); *see Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826–827 (5th Cir. 2025).[2] "Damage is considered to have been sustained, within the meaning of [Article 3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (alteration in original) (citation omitted). "But '[u]nder Louisiana law, there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agere non currit praescriptio*, which means "[n]o prescription runs against a person unable to bring an action."'" *Allied World*, 134 F.4th at 827 (alteration in original) (citation omitted). "The doctrine tolls prescription under any of four 'exceptional circumstances,' one of which is 'where the cause of action is not known or reasonably knowable by the plaintiff,' termed the 'discovery rule.'" *Bruno v. Biomet, Inc.*, 74 F.4th 620, 623 (5th Cir. 2023) (citation omitted).

"Under the discovery rule, '[a]ctual knowledge is not required' for prescription to start running; 'constructive notice suffices.' 'Constructive knowledge or notice sufficient to commence the running of prescription requires more than a mere apprehension

---

[2] "In Louisiana, 'limitations periods are often called "prescriptions" or "prescriptive periods."'" Under LA. CIV. CODE art. 3493.1, Louisiana now has a two-year prescription period for torts, but this new provision only applies to actions arising after July 1, 2024." *Allied World*, 134 F.4th at 827 n.3 (citation omitted).

4

something might be wrong.'" *Allied World*, 134 F.4th at 827 (alteration in original) (citation omitted). "However, 'when a plaintiff suspects something is wrong, he must "seek out those whom he believes may be responsible for the specific injury."' 'The duty to act requires an investigation of the injury.'" *Bruno*, 74 F.4th at 624 (footnote omitted) (citation omitted). "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Allied World*, 134 F.4th at 827 (citation omitted). "The discovery rule 'applies only when such ignorance is not willful and does not result from negligence.' In other words, '[w]hen a plaintiff acts reasonably to discover the cause of a problem, "the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant."'" *Bruno*, 74 F.4th at 624 (alteration in original) (footnote omitted) (citation omitted). "Summary judgment is inappropriate where reasonable minds could differ as to the applicability of *contra non valentem*." *Allied World*, 134 F.4th at 827 (citation omitted).

Defendants asserted that Pelican's "claims . . . are on their face prescribed under Section 3492" because he "did not commence his action . . . within one year of June 3, 2016," when he "was diagnosed with a left hip infection and underwent revision surgery because of that infection," and that "his claims are not saved by the discovery rule." Pelican responded that *contra non valentem* "makes [his] claim timely." "[B]ecause [he] had no knowledge, constructive or actual, that a [forced air warming system], let alone a [Bair Hugger], was used in his May 2016 hip surgery until August 24, 2022," when his medical records "were obtained by [him] and his counsel," Pelican maintained that "the prescription period did not begin to run until August 24, 2022."

In May 2016, Pelican underwent left hip surgery. Use of the Bair Hugger during the surgery allegedly resulted in him developing a periprosthetic joint infection. In early June 2016, Pelican presented to his physician with complaints of left hip surgical site drainage and pain. The next day, he underwent the first of five revision surgeries. Cultures revealed the presence of methicillin-sensitive staphylococcus aureus. A PICC line, through which Pelican received antibiotics, was placed a few days later. The subsequent revision surgeries took place in November 2016, January 2017, July 2017, and August 2017. Pelican maintained that the five revision surgeries resulted from the infection caused by use of the Bair Hugger during his May 2016 surgery.

Pelican was deposed in May 2024. He testified that he communicated with an individual via Facebook approximately three or four years before the deposition, that he and the individual discussed hip infections after surgery, and that the individual mentioned a warming device. After the discussion, Pelican searched surgical warming devices on the Internet. A question about whether he ever had infections appeared on his screen. Pelican responded affirmatively and was referred to the law firm that represents him in this action.

In May 2022, Pelican's attorneys identified him in a list of unfiled actions that was shared with Defendants. *See B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 920 (8th Cir. 2012). He filed this action in June 2023. Later in June, Pelican served his fact sheet on Defendants. In it, he stated that, in January 2022, he first discovered the Bair Hugger was used during his surgery from his medical records. In February 2024, Pelican

6

served an amended fact sheet on Defendants. In it, he stated that, in August 2022, he first discovered the Bair Hugger was used during his surgery from his medical records.[3]

Viewing the record in the light most favorable to Pelican, the Court concludes that the doctrine of *contra non valentem* does not make Pelican's action timely. *See In re Taxotere*, 995 F.3d at 391 ("[P]rescription runs 'from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim.' It 'does not necessarily wait for the pronouncement of a victim's physician or of an expert.'" (citation omitted)). More than a year before he brought this action, Pelican developed a periprosthetic joint infection that allegedly resulted from use of the Bair Hugger during his hip surgery; he underwent five revision surgeries; he communicated with an individual on the Internet about infections after hip surgeries; the individual mentioned warming devices to him; he researched warming devices on the Internet; he was referred to the attorneys who represent him in this case; and his attorneys identified him in a list of unfiled actions. Pelican could have requested and reviewed his medical records at any time after he developed a periprosthetic joint infection and underwent, in June 2016, the first of five revision surgeries. The prescription period did not await review of his medical records in August

---

[3]   With respect to when Pelican first learned that the Bair Hugger was used during his surgery, the parties disputed whether his amended fact sheet is a sham. The Court need not resolve the dispute and assumes without deciding that his amended fact sheet is accurate.

2022 to start running. *See id.* at 392 ("Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury."). Pelican's action is untimely.[4]

## II. Motion to Exclude Expert Opinions and Testimony

Defendants moved to exclude the opinions and testimony of Dr. Yoav Golan. Having concluded that Pelican's action is untimely, the Court denies as moot Defendants' motion to exclude.

## III. Conclusion

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 104] is GRANTED.

2. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Yoav Golan [Docket No. 111] is DENIED.

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2025

s/Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge

---

[4] Having concluded that Pelican's action is untimely, the Court need not consider Defendants' remaining arguments for summary judgment.